**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 22 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

ELLSWORTH MOTOR FREIGHT
LINES, INC.,

      Plaintiff-Appellant,

v.

NORTH AMERICAN RESOURCES,
INC.; BLACK CREEK LAND AND
MINERAL, INC.; SILVER CREEK
RESOURCES, INC.; FOSTER COAL
COMPANY; BARR LAND, INC.;
DERRELL CHAMBLEE, an
individual,

      Defendants-Appellees.

No. 99-5102
(N. District of Oklahoma)
(D.C. No. 96-CV-901-K)

**ORDER AND JUDGMENT**[*]

Before **BRORBY**, **McKAY,** and **MURPHY**, Circuit Judges.

## I.  INTRODUCTION

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata and collateral estoppel.  The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

In this diversity action, Ellsworth Motor Freight Lines, Inc. ("Ellsworth") sued North American Resources, Inc. ("NAR"), Black Creek Land and Mineral, Inc. ("Black Creek"), Silver Creek Resources, Inc. ("Silver Creek"), Foster Coal Co. ("Foster Coal"), Barr Land, Inc. ("Barr"), and Derrell Chamblee, an individual involved with all the defendant corporations, (collectively "defendants") alleging their failure to pay Ellsworth for providing hauling services. After a jury trial, the district court entered judgment in favor of Ellsworth and against all the defendants on three fraud claims–fraudulent inducement, fraudulent transfer, and aiding and abetting–and in favor of Ellsworth and against NAR only on a breach of contract claim. Ellsworth was awarded $640,006.66 on the contract claim and $51,200 on the fraudulent inducement claim, but no damages for either the fraudulent transfer or aiding and abetting claim. Additionally, punitive damages were assessed against NAR in the amount of $35,000, against Foster Coal in the amount of $43,500, and against Chamblee in the amount of $62,000.

On appeal, Ellsworth challenges the district court's refusal to reconcile allegedly inconsistent verdicts, its grant of summary judgment on an alter ego or instrumentality theory of liability, and its rejection of jury instructions on numerous additional theories of liability. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, this court **affirms** the judgment of the district court.

## II. BACKGROUND

In the Spring of 1992, Fred Lafser incorporated and became the sole shareholder of NAR. NAR then purchased Riedel Energy, Inc., which became a wholly owned subsidiary of NAR. In September of 1993, Charles Wagner also invested in NAR.

In late 1994, Chamblee, Wagner, Lafser, and NAR executed a stock exchange agreement, after which Chamblee owned 85% of NAR, and Barr and Black Creek became wholly owned subsidiaries of NAR. Chamblee also became NAR's president and assumed one of two seats on its board of directors. Lafser became the senior vice-president of NAR and its other director. In February of 1995, NAR incorporated Foster Coal as another wholly owned subsidiary.

In August or September of 1995, a sales manager at Ellsworth, a motor carrier which transports property in interstate and foreign commerce, contacted Lafser about hauling coal for NAR. According to Ellsworth, during these negotiations Lafser represented that all the defendant corporations had merged into one, thus creating an economically strong entity. Consequently, Ellsworth entered into a written contract with NAR to haul coal on behalf of two NAR customers. After Ellsworth began hauling coal for those two customers, it received payment checks for those services from NAR, Foster Coal, and Silver Creek. Soon thereafter, NAR solicited Ellsworth to haul goods for other NAR

customers, which Ellsworth did pursuant to oral agreements. Ellsworth was then providing between $150,000 and $450,000 per month in hauling services.

In the Spring of 1996, NAR began to fall behind on its payments to Ellsworth. When Ellsworth became increasingly concerned about these late payments, Chamblee reassured Ellsworth that the defendant corporations remained financially healthy. Ellsworth thus continued to provide hauling services for NAR. By September, however, Chamblee informed Ellsworth that NAR could not pay over $600,000 which it owed for services provided. Ellsworth then ceased hauling for NAR.

Ellsworth filed suit against the defendants, alleging the defendants made numerous misrepresentations and withheld information to induce Ellsworth to provide the hauling services. Ellsworth contended, *inter alia*, the defendants misrepresented their financial strength and failed to disclose that during the relationship, the defendants shifted assets and spun off some of the corporations to insulate all the defendants but NAR from liability. Ellsworth asserted the following claims for relief: breach of contract, fraud, aiding and abetting NAR's wrongful acts, and violations of the Oklahoma Deceptive Trade Practices Act, the Oklahoma Consumer Protection Act, and common law prohibitions against deceptive trade practices. Ellsworth alleged all the defendants were liable based on numerous legal theories, including alter ego, respondeat superior, partnership

or joint venture, and agency. NAR admitted that it entered into a contract with Ellsworth and owed Ellsworth money on that contract, but the other defendants denied any contractual or other liability. Although Ellsworth ultimately obtained a judgment against NAR on the contract claim and against the other defendants on three fraud claims, it now appeals various rulings by the district court which limited the scope and amount of liability of the non-NAR defendants.

## III. DISCUSSION[1]

### A. Inconsistent Verdicts

On the verdict form entitled "Plaintiff's Fraud Claims," the jury found, pursuant to a special interrogatory, that NAR functioned "in its dealings" as the agent for all five of the other defendants. On that same verdict form, however, the jury found against only NAR and Foster Coal on the fraudulent inducement claim and against only NAR, Foster Coal, and Chamblee on both the fraudulent

---

[1]The district court ruled that Oklahoma law governs this diversity suit. That ruling has not been appealed. This court, therefore, will apply Oklahoma substantive law and federal procedural law. *See Boyd Rosene & Assocs. v. Kansas Mun. Gas Agency*, 174 F.3d 1115, 1118 (10th Cir. 1999). This court must apply Oklahoma substantive law as announced by the state's highest court. *See Shugart v. Central Rural Elec. Co-op.*, 110 F.3d 1501, 1504-05 (10th Cir. 1997). Furthermore, "this court must . . . follow any intermediate state court decision unless other authority convinces us that the state supreme court would decide otherwise." *Daitom, Inc. v. Pennwalt Corp.*, 741 F.2d 1569, 1574 (10th Cir. 1984).

transfer and aiding and abetting claims. The jury awarded Ellsworth $51,200 in damages on the fraudulent inducement claim but no damages for either the fraudulent transfer or aiding and abetting claim. Finally, on a separate verdict form, the jury found for Ellsworth and against NAR on the breach of contract claim, awarding Ellsworth $640,006.66 in damages.

After the jury returned this verdict, Ellsworth, pursuant to Fed. R. Civ. P. 49(b), moved the district court to reconcile what it considered inconsistent verdicts. Ellsworth first asserted the jury's finding that NAR acted as the agent for all the other defendants required the district court to enter judgment against all the defendants on all of its claims. Ellsworth further contended the district court needed to alter the jury's damage awards on the fraudulent inducement, fraudulent transfer, and aiding and abetting claims to approximately $640,000 on each claim, because the jury found liability on those three claims and the only uncontroverted evidence presented at trial supported damages in that amount.

As a consequence of the jury's agency finding on the verdict form for the three fraud claims, the district court did enter a judgment against all the defendants on Ellsworth's fraudulent inducement, fraudulent transfer, and aiding and abetting claims. Conversely, the district court concluded the general verdict against only NAR on the contract claim was not inconsistent with the jury's answer to the agency interrogatory on the verdict form for the fraud claims. It

thus denied Ellsworth's motion to enter judgment against all the defendants on the contract claim. Furthermore, the district court concluded the jury's damage awards on the fraudulent inducement, fraudulent transfer, and aiding and abetting claims were reconcilable with its findings of liability and the evidence presented at trial. The district court, therefore, declined to amend the jury's damage awards. Ellsworth now appeals the denial of its motion to reconcile the purportedly inconsistent jury verdicts.

### 1. Agency and the Contract Claim

This court first rejects Ellsworth's argument that the jury returned inconsistent verdicts by finding NAR acted as the other defendants' agent on the fraud verdict form but only finding NAR liable on the contract claim. Ellsworth's argument rests on the premise that the jury, in reaching its verdicts, did so erroneously. In this case, however, the alleged error in holding only NAR liable for the breach of contract cannot be pinned on the jury. The verdict form on the breach of contract claim allowed the jury to find against only NAR and none of the other defendants. The district court had previously rejected Ellsworth's proposed instruction which would have enabled the jury to find against the other defendants on the contract claim based on an agency theory. This court, therefore, cannot look to Rule 49(b), as Ellsworth urges, to rectify the finding that only NAR is liable on the contract claim. The real issue, which Ellsworth also

raises in this appeal and which this court addresses *infra*, is whether the district

court erred in refusing to submit Ellsworth's proposed instruction which would

have allowed the jury to consider agency liability on the contract claim.[2]  *See*

*infra* Section III.C.1.

### 2.  Damages on the Fraud Claims

This court reviews for abuse of discretion a trial court's determination that

a jury verdict is not inconsistent.  *See Harris Mkt. Research v. Marshall Mktg. &*

*Communications, Inc.*, 948 F.2d 1518, 1522 (10th Cir. 1991).  The relevant

portion of Rule 49(b) provides,

> When the answers [to special interrogatories on questions of fact] are
> consistent with each other but one or more is inconsistent with the
> general verdict, judgment may be entered pursuant to Rule 58 in
> accordance with the answers, notwithstanding the general verdict, or
> the court may return the jury for further consideration of its answers
> and verdict or may order a new trial.

Fed. R. Civ. P. 49(b).  Pursuant to the plain language of Rule 49(b), therefore,

before a district court chooses to disregard the general verdict and enter judgment

consistent with the special interrogatory answers, resubmit the verdict to the jury

for further consideration, or order a new trial, it must make a threshold

---

[2]Even Ellsworth acknowledges that the alleged inconsistency between holding only NAR liable on the contract claim and the jury's answer to the special interrogatory on agency flowed not from any error committed by the jury, but from the district court's decision to preclude the jury from considering agency liability on the contract claim.

determination that the general verdict is in conflict with the special interrogatory answers.

It is well-settled precedent that in making that threshold determination, the district court is obligated to take a view of the case, if one is possible, which renders the special interrogatory answers and the general verdict reconcilable. *See Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd.*, 369 U.S. 355, 364 (1962) ("Where there is a view of the case that makes the jury's answers to special interrogatories consistent, they must be resolved that way."); *Harvey v. General Motors Corp.*, 873 F.2d 1343, 1347 (10th Cir. 1989) ("[W]hen submitting a general verdict and interrogatories under Rule 49(b), both the trial and appellate courts have a duty to reconcile the two if any seeming conflict arises."); *Bass v. Dehner*, 103 F.2d 28, 34 (10th Cir. 1939) ("[B]efore declaring a conflict [between special factual findings by the jury and its general verdict], an effort should be made to reconcile apparent inconsistency."). This court must therefore determine whether the district court abused its discretion in concluding that under one possible view of this case, the damages awarded on the three fraud claims were consistent with the finding of liability on those claims.

At trial, Ellsworth presented evidence that in October of 1995 it entered into a written contract with NAR to provide hauling services for two of NAR's customers, Trigen and Kansas City Power and Light. Ellsworth adduced further

testimony that in addition to this initial written contract, it later entered into numerous oral agreements with NAR to haul coal for other NAR customers. The Ellsworth sales manager who negotiated both the written and oral agreements testified that he relied on NAR's allegedly fraudulent representations more so when deciding to enter into the oral contracts than he did when negotiating the written contract. Given that evidence, the jury reasonably could have concluded any fraudulent statements made by NAR did not induce Ellsworth to enter into the initial written contract but did induce it to make the later oral agreements. The jury thus may have based its verdict on the fraudulent inducement claim purely on some or all of the oral contracts. Consistent with that possibility, the jury, during its deliberations, sent a question to the judge asking whether Ellsworth's fraudulent inducement claim could be premised on the oral contracts, to which the district judge answered in the affirmative.

The jury's award of damages on the fraudulent inducement claim is in harmony with this view of the case. If NAR fraudulently induced Ellsworth to enter into only some or all of the oral agreements, damages on the fraudulent inducement claim should not reflect the amount of money owed on all of the agreements between the companies including the written one. Based on the evidence, therefore, the jury may have calculated that NAR owed Ellsworth $51,200 on those particular oral contracts which NAR fraudulently induced

Ellsworth to enter. The district court thus did not abuse its discretion in concluding a view of the case exists to render the liability finding on the fraudulent inducement claim consistent with the $51,200 in damages awarded on that claim.

The district court also did not abuse its discretion in refusing to alter the jury's award of zero damages on the fraudulent transfer and aiding and abetting claims. According to the jury instruction on Ellsworth's fraudulent transfer claim, the proper amount of damages on that claim was the lesser of "the value of the asset transferred or the amount necessary to satisfy Ellsworth's claim." Ellsworth contends that the undisputed evidence at trial demonstrated the asset which was fraudulently transferred, Black Creek stock, was worth $2.1 million and that, pursuant to the agreed upon damages for the contract claim, $640,006.66 was the amount necessary to satisfy Ellsworth's claim. Ellsworth thus argues the jury's finding of liability on the fraudulent transfer claim is inconsistent with an award of damages of anything but $640,006.66.

The evidence at trial, however, did not so definitively demonstrate the Black Creek stock was worth $2.1 million at the time it was transferred from NAR to Chamblee. Rather, Ellsworth presented evidence only that Chamblee himself had so valued the stock prior to its transfer in January of 1996. Furthermore, in questioning its witnesses, Ellsworth's own attorney suggested that

Black Creek was in fact "starving for cash," "undercapitalized," and unable to pay its bills. According to Ellsworth's first amended complaint, its fraudulent inducement claim was premised on the very assertion that Black Creek and the other defendant corporations were not worth what Chamblee claimed but rather were "severely undercapitalized and/or insolvent." The jury, therefore, reasonably could have concluded that the Black Creek stock which NAR fraudulently transferred was actually worthless. If the jury reached that conclusion, it was obligated to award zero damages on the fraudulent transfer claim pursuant to the district court's instruction.

This possible conclusion by the jury regarding the fraudulent transfer claim is also not inconsistent with its finding of liability and award of zero damages on the aiding and abetting claim. The jury may well have premised its aiding and abetting liability purely on the defendants' complicity in the fraudulent transfer.[3] The act of aiding and abetting a fraudulent transfer which itself caused no damages would consequently also yield no damages.

---

[3]In its complaint, Ellsworth itself asserted all the defendants participated in this asset shifting. Furthermore, during a jury instruction conference, Ellsworth stated that it did not care whether the verdict form required the jury to specify whether it was finding the defendants aided and abetted the fraudulent transfer or the fraudulent inducement. The verdict form thus did not require such specification from the jury. It is therefore possible that the jury found aiding and abetting purely on the basis of the fraudulent transfer. Moreover, it was Ellsworth that requested the verdict form for the aiding and abetting claim include a separate line for damages for that specific claim.

In sum, the district court did not abuse its discretion in concluding that the amount of damages awarded on the three fraud claims were reconcilable with the finding of liability and the evidence on those claims.

### B. Summary Judgment on Alter-Ego/Instrumentality Theory of Liability on the Contract Claim

Ellsworth sought to hold the non-NAR corporate defendants liable for NAR's breach of contract on the theory that these other defendants were merely alter egos or instrumentalities of NAR. The district court, however, granted the defendants' motions for summary judgment on this theory of liability. Ellsworth now appeals that ruling.

This court reviews *de novo* a district court's grant of summary judgment, applying the same legal standard employed by the district court. *See Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1175 (10th Cir. 1999). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In applying this standard, this court views the evidence and draws reasonable inferences therefrom in a light most favorable to the non-moving party. *See Anderson*, 181 F.3d at 1175. Furthermore, we review *de novo* a district court's interpretation of state law. *See Morganroth & Morganroth v. DeLorean*, 213 F.3d 1301, 1317 (10th Cir. 2000).

In *Wallace v. Tulsa Yellow Cab Taxi & Baggage Co.*, the Oklahoma Supreme Court established the principle that if "one corporation is so organized and controlled and its affairs so conducted that it is merely an instrumentality or adjunct of another corporation," the dominant corporation may be held liable for the acts of the instrumentality corporation. 61 P.2d 645, 648 (Okla. 1936). The Oklahoma Court of Civil Appeals, however, has held that this instrumentality or alter ego theory of liability cannot be used to hold one subsidiary corporation liable for the acts of a sibling subsidiary. *See Warner v. Hillcrest Med. Ctr.*, 914 P.2d 1060, 1067 (Okla. Ct. App. 1995). The *Warner* court reasoned that instrumentality or alter ego liability "has its roots in master-servant/employer-employee cases," and thus, liability can only flow from the subsidiary to the parent. *Id.* Both in the district court and on appeal, Ellsworth has argued that NAR was the parent corporation and that the other corporate defendants were NAR's subsidiaries. Pursuant to *Warner*, the alleged subsidiaries cannot be held liable for NAR's breach of contract on a theory of alter ego or instrumentality liability; only NAR could be held liable for the acts of the purported subsidiary corporations, but that is not what Ellsworth is arguing.[4] The district court,

---

[4]To the extent Ellsworth might be arguing that all the corporate defendants were sibling subsidiary corporations controlled by Chamblee, *Warner v. Hillcrest Medical Center* also precludes holding the non-NAR corporate defendants liable for NAR's breach of contract. *See* 914 P.2d 1060, 1067 (Okla. Ct. App. 1995).

-14-

therefore, properly granted summary judgment in favor of Black Creek, Silver Creek, Foster Coal, and Barr on Ellsworth's alter ego or instrumentality theory of liability on the contract claim.

Ellsworth further contends the district court erred in granting Chamblee summary judgment on the alter ego or instrumentality theory of liability, because as a corporate officer, he can be held personally liable for the wrongful use of funds entrusted to him if he was negligent in his duties as an officer. Although Ellsworth did argue at summary judgment that Chamblee could be liable as a corporate officer, it did not make this argument within the context of alter ego or instrumentality liability. It does not appear that the district court, in its summary judgment order, ever ruled on this distinct theory of Chamblee's liability; Ellsworth, therefore, was not precluded from presenting such a theory. Moreover, Ellsworth never objected to the district court's jury instruction which allowed the jury to hold Chamblee liable as an officer or director only on the fraud claims,[5] nor does it challenge that instruction on appeal. Ellsworth, therefore, waived for appellate review the district court's failure to submit this theory of liability to the

_____

[5]Ellsworth did propose a more expansive instruction which would have enabled the jury to hold Chamblee liable as an officer or director on the contract claim, as well as the fraud claims. Ellsworth, however, failed to object to the district court's refusal to give this proposed instruction. Furthermore, Ellsworth's proffer of its own instruction does not constitute an objection to the one given. *See United States v. Voss*, 82 F.3d 1521, 1530 (10th Cir. 1996).

jury. *See* Fed. R. Civ. P. 51 ("No party may assign as error the giving or the failure to give an instruction unless the party objects thereto before the jury retires to consider its verdict . . . ."); *State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 984 n.7 (10th Cir. 1994) (noting that the failure to raise an issue in the opening brief waives the issue for appellate review).

## C. Jury Instructions

### 1. Agency Liability on the Contract Claim

Ellsworth proposed an instruction ("Requested Instruction 20") which stated that if the jury finds NAR acted as the agent for the other defendants, it would need to hold all the defendants liable on the breach of contract claim. Over Ellsworth's objection and arguments,[6] the district court refused to give this instruction, concluding there was insufficient evidence to show that NAR acted as the other defendants' agent in entering the contract with Ellsworth. Instead, the district court allowed the jury to find only NAR in breach of the contract, limiting Ellsworth's agency theory to its fraud claims. Ellsworth now appeals the district court's refusal to submit Requested Instruction 20.

A party is only entitled to an instruction on a claim if enough evidence was presented at trial for a reasonable jury to find in favor of that party on that claim.

---

[6]The record belies the defendants' contention that Ellsworth failed both to object to the district court's refusal to give this instruction and to state specific grounds for that objection.

*See Kieffer v. Weston Land, Inc.*, 90 F.3d 1496, 1500 (10th Cir. 1996). Under Oklahoma law, an agent can bind a principal to a contract with a third party if that agent has actual or apparent authority to do so. *See Home Owners' Loan Corp. v. Thornburg*, 106 P.2d 511, 512 (Okla. 1940). An agent possesses actual authority to bind the principal to the contract if the principal either expressly or impliedly grants such authority. *See id.* Apparent authority, however, "results from a manifestation *by the principal to a third person* that another is his agent." *Stephens v. Yamaha Motor Co.*, 627 P.2d 439, 441 (Okla. 1981) (emphasis added). "Agency cannot be proved by the declarations of the reputed agent." *Thornburgh*, 106 P.2d at 514. A third party asserting apparent authority to bind an alleged principal to a contract must also demonstrate its reliance on the principal's manifestation and its change of position as a result thereof. *See Southwestern Bell Media, Inc. v. Arnold*, 819 P.2d 293, 294 (Okla. Ct. App. 1991).

In rejecting Requested Instruction 20, the district court concluded that insufficient evidence had been presented to demonstrate NAR had either actual or apparent authority to act as the agent for the other defendants in entering the contract with Ellsworth. Specifically, the court stated, "no evidence was presented that North American was authorized to enter contracts on behalf of the co-defendants. To the extent [Ellsworth] relies upon 'apparent authority,' at most

the evidence suggested that [Ellsworth] believed some or all of the co-defendants might act as *guarantors* of the contract between [Ellsworth] and North American, but [Ellsworth] never sought such guarantees."

In its brief, Ellsworth fails to reference any portion of the record which undermines the district court's assessment of the evidence presented at trial. Ellsworth does not direct this court to any trial evidence demonstrating either that the non-NAR defendants had expressly authorized NAR to act as their agent in negotiating with Ellsworth or that the non-NAR defendants had manifested to Ellsworth, through words or conduct, that NAR was their agent. In fact, Ellsworth's argument section addressing this jury instruction issue contains no citation whatsoever to the evidentiary portion of the trial record. "In the absence of essential references to the record in a party's brief, [this] court will not sift through the record to find support for the claimant's arguments." *United States v. Rodriguez-Aguirre*, 108 F.3d 1228, 1237 n.8 (10th Cir. 1997) (quotation omitted); *see also* Fed. R. App. P. 28(a)(9)(A) ("The appellant's brief must contain . . . the argument, which must contain: (A) appellant's contentions and the reasons for them, *with citations to the authorities and parts of the record on which the appellant relies . . . .*" (emphasis added)). Ellsworth, therefore, has waived for appellate review its challenge to the district court's refusal to give an agency instruction on the breach of contract claim.

### 2. *Apparent Partnership, Partnership by Estoppel, Agency by Estoppel, and Joint Venture*

Over Ellsworth's objection, the district court refused to instruct the jury on four additional theories of liability on the contract claim–apparent partnership, partnership by estoppel, agency by estoppel, and joint venture.[7]  Ellsworth challenges the district court's refusal to submit these theories to the jury.  On appeal, however, Ellsworth fails to cite any legal authority establishing the existence under Oklahoma law or the elements of these various theories of liability, nor does it argue how the evidence presented at trial was sufficient to meet these legal theories.  This court requires parties to support their arguments on appeal with citation to legal authority.  *See Phillips v. Calhoun*, 956 F.2d 949, 953-54 (10th Cir. 1992).  When a party fails to do so, this court may deem that argument waived for appellate review.  *See United States v. Hardwell*, 80 F.3d 1471, 1492, *reh'g granted in part on other grounds*, 88 F.3d 897 (10th Cir. 1996).  Appellate waiver is particularly appropriate for this argument advanced by Ellsworth because it has asserted so many theories of liability against the defendants that this court requires some direction as to the governing law on those

---

[7]To the extent this argument also encompasses the asserted theory of apparent agency, this court addressed the district court's refusal to instruct the jury on that theory in the prior section.  *See supra* Section III.C.1.

-19-

theories. We thus conclude Ellsworth's challenge to the district court's refusal to instruct the jury on these four theories of liability is waived on appeal.

### 3. *Constructive Fraud*

Ellsworth also requested instructions which would have allowed the jury to find the defendants liable, under a constructive fraud theory, if they had chosen to speak to Ellsworth yet failed to disclose pertinent facts or the whole truth. The district court, however, refused to give these specific instructions. Ellsworth appeals that decision.

Ellsworth ultimately did prevail against all the defendants on its three fraud claims, even without the benefit of its proposed instructions setting out a constructive fraud theory of liability. Under Ellsworth's own proposed instructions, the jury would have been entitled to impose damages against the defendants if it found the defendants committed either actual or constructive fraud, but it could not assess separate damages for both types of fraud. Thus, even if the district court erred in refusing to give the requested constructive fraud instructions, a question we do not decide, the jury's finding of liability on the three fraud claims rendered any such error harmless. *See Wiles v. Michelin North Am., Inc.*, 173 F.3d 1297, 1304 (10th Cir. 1999). This court, therefore, will not reverse the judgment based on the district court's decision not to give these proposed instructions.

### *4. Misappropriation or Conversion of Corporate Funds*

The district court refused to give an instruction proposed by Ellsworth ("Requested Instruction 27") which would have enabled the jury to find the defendants liable for misappropriation or conversion of corporate funds. Although Ellsworth objected to the district court's decision not to give this instruction, his objection was limited to the following statement: "We object to the Court for failing to give our instruction numbers 16, 18, 19, 20, 21, 27, 31, 36, 37, and 38 . . . ." Ellsworth never stated the specific grounds for its objection, failing to articulate why it believed it was entitled to Requested Instruction 27. "No party may assign as error the giving or the failure to give an instruction unless the party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to *and the grounds of the objection.*" Fed. R. Civ. P. 51 (emphasis added). Even if this court were to review for plain error the district court's refusal to give Requested Instruction 27, Ellsworth has not met "the heavy burden of demonstrating fundamental injustice." *Medlock v. Ortho Biotech, Inc.*, 164 F.3d 545, 553 (10th Cir.), *cert. denied*, 120 S. Ct. 48 (1999). The district court thus did not commit reversible error in denying Ellsworth's request to give this instruction.

## IV.  CONCLUSION

For the foregoing reasons, this court **AFFIRMS** the judgment entered by the District Court for the Northern District of Oklahoma.

ENTERED FOR THE COURT:


Michael R. Murphy
Circuit Judge